IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

THOMAS MAYER, )
)
    Plaintiff, )
)
v. )    Cause No.: 4:04CV00655HEA
)
CITY OF ST. CHARLES, MISSOURI, )
et al., )
)
    Defendants. )

**DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION
FOR PROTECTIVE ORDER RELATING TO QUESTIONS DIRECTED TO
ST. CHARLES CITY EMPLOYEES**

## I.   INTRODUCTION

On April 21, 2005, Chief of Police Timothy Swope terminated Plaintiff's

employment as a police officer with the City of St. Charles. Plaintiff's employment was

terminated, in part, because of his on duty actions and conduct on March 23 and 24,

2005. St. Charles City Police Officer David Senter (hereinafter referred to as "Senter")

was an eyewitness to some of Plaintiff's actions and conduct on March 23 and 24, 2005.

Between March 24, 2005 and April 21, 2005, certain officers within the command

staff of the St. Charles City Police Department conducted an i8nternal investigation into

the actions and conduct of the Plaintiff. Said investigation involved interviews of police

officers, including, but not limited to, Senter, that possessed relevant information. After

Plaintiff was terminated, the investigators continued to interview police officers and

others to supplement the investigation and reconfirm information previously obtained.

Consistent with the provisions of the St. Charles City Employee Personnel

Manual, Plaintiff has applied for an administrative review and hearing of his termination.

Said review and hearing initially was scheduled for May 26, 2005. At the request of the Plaintiff, said administrative review hearing has been rescheduled for June 28, 2005.

On May 17, 2005, Defendants deposed Senter in this litigation. Defendants' counsel asked Senter questions relative to his knowledge of Plaintiff engaging in personal activities while on duty and comments made by other St. Charles City Police Officers concerning Plaintiff engaging in personal activities while on duty. **(EXHIBIT A, p. 103).** In responding to those questions, Senter volunteered that he had been interviewed by Captain McCarrick, a member of the command staff of the St. Charles City Police Department. Because the interview of Senter by Captain McCarrick is part of a closed, ongoing personnel matter, Defendants' counsel did not inquire into the nature, scope, or content of the interview. [1]

When Senter's deposition continued on May 18, 2005, counsel for Plaintiff asked Senter about the nature, scope, and content of his interview by Captain McCarrick. Because Senter was not represented by counsel at his deposition, Defendants' counsel cautioned Senter that any testimony he may proffer relevant to closed and confidential personnel matters would be at his risk and peril. Defendants' counsel did not instruct Senter not to respond to Plaintiff's questions but merely informed him that such testimony was at his risk and peril and could have consequences. Senter was free to respond or not respond to Plaintiff's questions. Senter decided not to respond to Plaintiff's questions until he had an opportunity to confer with counsel.[2]

Plaintiff's counsel then started that he would not ask Senter any additional questions relative to his interview until such time as he filed and the Court ruled on

---

[1] In paragraph 1 of his Motion, Plaintiff claims that Defendants' counsel asked Senter questions regarding his interview by McCarrick. As Exhibit A confirms, Plaintiff's assertion is grossly inaccurate.

[2] Plaintiff's assertion that Defendants' counsel "threatened" Senter is insulting and contrary to fact.

Plaintiff's Motion for Protective Order. Plaintiff did not file the instant Motion for Protective Order until May 24, 2005, six days later. As set forth in detail in Defendants' Motion for Sanctions Regarding the Depositions of Dean Meyer and Brian Morrissey, Plaintiff and his counsel caused other St. Charles City Police Officers to disregard and disobey subpoenas for their depositions on May 20, 2005 in order to put a halt to discovery until such time that the Court could rule on Plaintiff's Motion for Protective Order.

## II.    ISSUE AT BAR AND RELIEF REQUESTED

The only issue presently before this Court is whether Senter should be compelled to answer questions concerning his interview by Captain McCarrick relative to the actions and conduct of the Plaintiff. Plaintiff has couched that issue in terms of a request for a Protective Order compelling Senter and other unknown and unidentified St. Charles City Police Officers to provide the desired testimony. Not properly before this Court are questions that Plaintiff's counsel has not asked of witnesses who have already given a deposition or questions that may be asked of future unidentified deponent witnesses. Also not before this Court are any requests for the production of any type of document.

Although the issue has been raised only with respect to Senter, Plaintiff's Motion for Protective Order and his Memorandum in Support seek an order compelling an unknown number of unidentified St. Charles City employees "to respond to deposition questions and discovery requests concerning internal investigations." Defendants note that Plaintiff has failed to identify any specific question(s) that the Court should compel the unknown and unidentified witnesses to answer at deposition. Moreover, the prayer for relief is not narrowly limited to internal investigations of the deponent witness concerning the conduct of the Plaintiff. Apparently, Plaintiff is going far beyond the

3

issue presented by the Senter deposition and he is seeking  an order compelling unknown and unidentified employees to provide testimony on internal investigations of any and all officers.

Plaintiff's Proposed Protective Order confirms the broad scope of the relief that Plaintiff seeks.  Plaintiff's Proposed Protective Order expressly defines "Confidential Material" as

"A.     All documents which refer or relate to, or are contained in the personnel file(s) of **any and all employees** of the City of St. Charles.

B.     Documents which refer or relate to discipline of **any employee** pf [sic] the City of St. Charles.

C.     Any and all documents which refer or relate to complaint(s) of the conduct of **any employee** of the City of St. Charles.

D.     **Any Internal Affairs investigative material**, including deposition testimony concerning such internal investigations, of the City of St. Charles.

E.     Information obtained from a review of the documents identified above; and;

F.     Information obtained through the deposition of **any current or former employee or official** of the City of St. Charles that relates to the above topics and/or documents."

It is readily apparent that Plaintiff desires a broad and expansive Protective Order that will compel unknown and unidentified witnesses to provide testimony well beyond the scope of their own internal interviews concerning the conduct and activities of the Plaintiff and which will obligate the Defendants and unknown and unidentified witnesses to produce documents unrelated to the internal investigation of the Plaintiff which have never heretofore been requested in this litigation.  To the extent that no such request for production has been tendered to counsel for the Defendants, this Motion is premature.  To the extent that any such documents have been requested from, but not produced by, the Defendants, Plaintiff is obligated to make a good faith effort to resolve any such dispute

4

and to file a Motion to Compel that specifically references the specific request and the documents not produced.  It is inappropriate for Plaintiff to utilize the present circumstances and the vehicle of a Motion for Protective Order in such a circuitous manner.

Defendants also note that neither Senter, nor any of the other unknown and unidentified individuals to whom Plaintiff desires to pose such questions at deposition are before the Court.  Plaintiff did not communicate his Motion for Protective Order or his Memorandum in Support to Senter or to any other unknown and unidentified individual to whom Plaintiff desire to pose such questions in the future.  Neither counsel for Defendants nor counsel for the Plaintiff represent Senter. As such, Plaintiff has prevented the very person(s) who he has moved this Court to compel to testify from responding to his Motion for Protective Order.  The jurisdiction of this Court to compel a witness to testify, absent notice and an opportunity to respond to a Motion seeking to compel their testimony, is dubious at best.

Defendants also submits that Plaintiff's exclusion of Senter and the unknown and unidentified others from  responding to this Motion  is inconsistent and irreconcilable with Plaintiff's counsel's conduct in having Dean Mayer and Brian Morrissey disobey their subpoenas for deposition on May 20, 2005.

## III.    AUTHORITY

Plaintiff has cited this Court to a number of case authorities, both published and unpublished, and has provided this Court with copies of order from the Honorable Stephen Limbaugh and the Honorable Catherine D. Perry of this District.  All of these authorities are inapposite and not controlling on the issue whether Senter and other

unknown and unidentified deponent witnesses should be compelled to testify regarding their interviews during internal investigations into Plaintiff's actions and conduct.

First, all of the authorities cited by the Plaintiff concern the discoverability of various types of documents, and only in some cases, documents concerning internal affairs investigations.  In none of the cases cited by the Plaintiff was the Court called upon to consider and determine whether testimony of a witness concerning an internal affairs interview or investigation was discoverable or could be compelled.

Second, the authorities cited by the Plaintiff stand for the proposition that federal court rules and not state law privileges or sunshine law provisions govern the discoverability of documents in federal cases.  Defendants note that most Sunshine Laws, including Missouri's Sunshine Law, provide that only certain types of materials may be closed.  Not even those documents which may be permissibly closed can be closed if disclosure is otherwise required by law. **Section 610.021 Mo. Rev. Stat.** Since Plaintiff sought only to elicit testimony, and not any documents, from Senter, these authorities are not controlling.

## III.    PROHIBITIONS AGAINST DISCLOSURE

Again, Defendants counsel does not represent Senter.  Defendants' counsel represents Defendant City of St. Charles and the other named Defendants with respect to the defense of Plaintiff's claims and the pursuit of Defendants' counterclaims in this litigation.  Defendants' counsel does not represent the City of St. Charles with respect to the enforcement of its rules, codes, policies, and ordinances, to include any potential violation of said rules, codes, policies, and ordinances by an employee of the City during deposition.  Defendants' counsel has no authority to determine whether the conduct of

Senter, or any other City employee, is violative of any rule, code, policy, or ordinance of the City. Such a determination is within the scope of the employee's superiors.

Notwithstanding the representations of Plaintiff's counsel, at no time did Defendants' counsel threaten, coerce, or order Senter not to respond to Plaintiff's inquiries regarding his internal interview by Captain McCarrick concerning the actions and conduct of the Plaintiff. Since Senter elected not to have counsel represent him at his deposition, Defendants' counsel perceived an obligation to inform Senter that, should he elect to testify about closed and confidential personnel matters, there may be a consequence for him. The decision whether or not to testify was entirely up to Senter. Senter elected to defer testifying until such time as he had the opportunity to consult counsel.

In addition to Section XV(Q) of the St. Charles City Police Department Code of Conduct cited by the Plaintiff, a review of the ordinances of the City and the City's Employee Personnel Manual suggests that any employee who testifies about interviews conducted in ongoing personnel matters may be subject to some form of discipline.

All employees in the Classified Service of the City of St. Charles, including Senter and other St. Charles City Police Officers, are subject to the rules within the St. Charles City Employee Personnel Manual. **(EXHIBIT B – Rules 1, 2.1, and 3; EXHIBIT C – Section III(A)).** The City recognizes an employee's right to privacy and the City and its employees are obligated to protect the confidentiality of all personal information in its records and files. **(EXHIBIT D – Rule 2.8).** Only very limited information concerning a terminated employee may be disclosed, not to include testimony concerning the substance of any internal interview. **(EXHIBIT E – Rule 2.9).** Moreover, City employees are prohibited from disclosing confidential information

concerning the property, government, employees or affairs of the City.  **(EXHIBIT F –**
**Ordinances §36.46 and §36.51).**

Plaintiff has not directed this Court to any authority holding that a witness can be
ordered to testify concerning closed, confidential interviews regarding employee
disciplinary matters.  Plaintiff has not directed this Court to any authority holding that the
witness would not be subject to discipline under City codes, rules, regulations, and
ordinances for voluntarily testifying concerning closed, confidential interviews regarding
employee disciplinary matters.

## V.     PROPRIETY OF A PROTECTIVE ORDER IN THIS CASE

Defendants note that Mr. Dolley and Mr. Kloeppel, counsel for the Plaintiff in this
cause, also are counsel for the Fraternal Order of Police, Lodge 15 (hereinafter referred to
as FOP Lodge 15).  Senter is a member of FOP 15.  Upon information and belief many, if
not all of the unknown and unidentified other St. Charles City Police Officers that
Plaintiff seeks to question about internal interviews in this cause also are members of
FOP Lodge 15.

Plaintiff's counsel seeks to elicit internal interview testimony from Senter and
other unknown and unidentified St. Charles City Police Officers for the benefit of the
Plaintiff in this litigation.  To the extent that such testimony exposes Senter and/or other
unknown and unidentified members of FOP Lodge 15 to discipline, Plaintiff's counsel is
acting contrary to the best interests of his other clients --- the members of FOP Lodge 15.
Defendants suggest that Plaintiff's counsel may have a conflict of interest such that they
may not elicit such internal interview testimony from St. Charles City Police Officers
who are members of FOP Lodge 15.

Moreover, in view of the history of this litigation, the willingness and ability of Plaintiff and his counsel to comply with any Protective Order issued by this Court is doubtful at best. As this Court is aware, FOP Lodge 15, represented by Plaintiff's counsel failed and refused to comply with this Court's February 3, 2005 Order to produce certain documents fro which Plaintiff had executed an authorization. Defendants then were required to subpoena Curt Saitta, the Custodian of Records for FOP Lodge 15, for deposition. Only after Mr. Saitta failed to attend his deposition and Defendants sought sanctions did Mr. Saitta finally appear and produce certain documents.

Similarly, as set forth in detail in Defendants' Motion for Sanctions Regarding the Depositions of Dean Meyer and Brain Morrissey, Plaintiff's counsel arranged for deponents Dean Meyer and Brain Morrissey to disregard subpoenas commanding their attendance for deposition on May 20, 2005.

WHEREFORE, for all of the reasons set forth above, Defendants pray this Court for the entry of an order denying Plaintiff's Motion for Protective Order Relating to the Deposition Questions Directed to St. Charles City Employees, for Defendants costs and attorneys' fees in responding to said Motion, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

PLEBAN & ASSOCIATES, LLC

By: _____/s/_____
C. John Pleban #4066
Michael J. Schaller #104005
2010 South Big Bend
St. Louis, MO 63117
(314) 645-6666
(314) 645-7376 FAX

HELFREY, SIMON & JONES, P.C.

By: _____/s/_____

Paul Simon #4373
120 South Central Ave.
Suite 1500
St. Louis, MO  63105
(314) 725-9100
(314) 725-5754  FAX

**Certificate of Filing**

The undersigned verifies that the foregoing was filed via the Court's electronic filing system for distribution to all counsel of record this 26th day of May 2005.

_____/s/_____

10

DEFENDANT'S
EXHIBIT

A

IN THE UNITED STATES DISTRICT COURT
EASTERN DIVISION OF MISSOURI
EASTERN DIVISION

THOMAS MAYER,                    )
                                 )
          Plaintiff,             )
                                 )   Cause No.: 4:04CV00655HEA
Vs.                              )
                                 )
CITY OF ST. CHARLES,             )
MISSOURI, et al.,                )
                                 )
          Defendants.            )


Deposition of:
DAVID SENTER
taken on behalf of the DEFENDANTS
MAY 17, 2005


COPY


Reported by:
JULIE HUNDELT, CCR
Missouri CCR No. 829


MORIARTY REPORTING & VIDEO, LLC
777 WHISPERING FOREST
BALLWIN, MO 63021
OFFICE: (636) 230-8838
FAX: (636) 230-8848
MOBILE: (314) 952-0437

WWW.MORIARTYREPORTING.COM

Case: 4:04-cv-00655-HEA   Doc. #: 94   Filed: 05/20/05   Page: 12 of 25 PageID #: 2030

ride along or topics of discussion?

    A    No.

    Q    Do you know who Kelly Garrett is?

    A    Yes.

    Q    She's Tom Mayer's girlfriend?

    A    Currently, I don't know what their status is. Like I said, I haven't talked to Tom since he was terminated; and I couldn't even tell you the last time I talked to Kelly. It was well before that.

    Q    Mr. Mayer was terminated when if you know?

    A    Two weeks ago approximately, three weeks ago.

    Q    Prior to his termination, were Mr. Mayer and Kelly Garrett having a relationship together?

    A    Yes, they were.

    Q    Do you know when that relationship started?

    A    Tom told me about it on the Fourth of July last year, 2004, on or about the 4th. We had a Fourth of July party.

    Q    He had Kelly Garrett with him at that time?

    A    No, she wasn't there.

    Q    What did he tell you on or about July 4, 2004?

    A    Kind of pulled me aside, told me that they had been dating and had been for a period of time. I

don't recall that he put any specifics on it. My impression of why he was telling me this afterward was that they had kind of quietly been seeing one another. It was probably going to come out. He wanted me to hear it from him rather than through the rumor mill.

    Q    Have you ever seen Tom Mayer's dedicated police vehicle at Kelly Garretty's house while Tom Mayer was on duty?

    A    No, sir.

    Q    Never?

    A    Never.

    Q    Are you aware that Tom Mayer was visiting Kelly Garrett while on duty?

    A    I don't want to sound like a smart ass, yes, I am, because he talked to me one time about eating cookies and milk.

    Q    When did he discuss eating cookies and milk at her house?

    A    That was late last year, early this year, sometime in the last four months five months.

    Q    Late 2004 or early 2005?

    A    Yes, sir.

    Q    Did he tell you how frequently he had been visiting Kelly Garretty's house while on duty?

    A    No, sir.

    Q    Did he tell you that when he was eating cookies at her house that he was on duty?

    A    We were at work when he told me, and he didn't specifically say, yeah, I was on duty when I did this. I assumed he had stopped by and grabbed a bite to eat on duty, yes.

    Q    Did he tell you what time during his shift he had stopped for cookies?

    A    No, sir.

    Q    Is there other rumor and scuttlebutt in the police department about Tom Mayer visiting Kelly Garretty's house while on duty?

    A    Prior to his termination or since, obviously, there has been.

    Q    Let's talk prior to the termination, was there any discussion?

    A    Yes.

    Q    What was the scuttlebutt or rumor prior to his termination with regard to him visiting Kelly Garretty's house while on duty?

    A    I'll use the same context I did when I was interviewed by Captain McCarrick about this. I would say it involved whatever officer, on occasion when you'd be talking to another officer and the subject of either Tom's lawsuit or the various ramifications of

that lawsuit would come up. The talk was often, well, if he is being followed like he says he is, I hope he's not dumb enough to be going by her house or exposing himself unnecessarily.

    Q    It was common knowledge among the members of C platoon that he was stopping by her house while on duty?

    A    It was common talk. I can't speak to the knowledge. Because like I said, I never went by and saw it for myself. I never had occasion to. That's not part of my job. Thinking back over it, you know, if I drove near her house, did I specifically not look over there, no. But like I said, it was common talk, but I don't know about common knowledge.

    Q    Who talked with you about Tom Mayer being over at her house while on duty?

    A    I would categorize that as any member of the C platoon. I mean, you know, guys are driving down the street, they stop, they shoot the breeze with one another for a while. If it came up during that time, it would have been that particular officer. But in regard to a specific officer saying, oh, my gosh, you're not going to believe what I saw or anything like, I never had any conversations like that. You know, like I said, I would categorize it as you said

DEFENDANT'S
EXHIBIT

_B_

# City of Saint Charles
# Employee Personnel Manual

# Saint Charles, Missouri
# Effective September 1,1999

9/99

# RULE 1 - DEFINITIONS

Administrator" is the City Administrator of the City who is responsible for personnel administration of the City.

Assignment" is an assignment of a classified employee from one position to another position or from one shift or location to another within the same department.

At-will Employee" is an employee who can be discharged without cause.

Certification" means the referral of the names of qualified prospective employees by the Personnel Officer on request of the appointing authority for selection to a position in the classified service.

Certified Police Officer" is a full-time certified police officer of the Police Department.

Class" is a group of positions sufficiently similar as to duties performed, scope of discretion and responsibility, minimum requirements of training, experience or skill and other characteristics such that the same title, the same tests of fitness and the same range of compensation have been or may be applied to each position in the group.

Classified Service" shall comprise all positions not specifically included in the unclassified service. A "classified position" is a position in the classified service.

Date of Appointment" is the date an appointment sheet is signed by the City Administrator.

Date of Hire" is the date the employee actually reports to work, the date on which all service and time accruals are generally based.

Date of Separation and/or Termination" is the day the employee's last day in a paid status.

Demotion" is a change in the rank of an employee from a position in one class to a position in another class having a lower pay grade.

Departmental Seniority" is the total period of continuous employment within a specific department.

Disability" is a physical or mental impairment that substantially limits a major life activity, having a record of such impairment, or being regarded by other as having such impairment.

Discharge" is an involuntary termination of an employee for cause or misconduct.

Dismissal" is a discharge.

Eligible" refers to a person who has made a passing score on any examination required under these Rules and who has been qualified for placement on a register.

Emergency Employee" is an employee appointed under the provision of Section 9.4.

1

9/99

## RULE 2 - GENERAL PROVISIONS

### SCOPE OF COVERAGE

These Rules shall cover all employees in the classified service, except where supplemented with, or modified by a Memorandum of Understanding/Work Resolution with a particular group of employees and representation of a bargaining unit.

Members of the unclassified service are employees at-will. Except for the rules pertaining to appointment, separations and disciplinary actions and procedures, and except as provided in ordinance, written policies or contracts with the employees, these rules shall apply to members of the unclassified service.

### PURPOSE

The purpose of these rules is to establish a system of personnel administration based on merit principles and scientific methods governing the recruitment, examination, appointment, promotion, transfer, layoff, removal, discipline and welfare of City employees and other incidents of City employment.

### AMENDMENT OF RULES

These rules may be amended, repealed or replaced as necessary from time to time. Amendments shall be effective upon approval by the City Administrator. Personnel actions taken prior to the effective date of new, abolished or amended rules shall be governed by the rules in effect on the effective date of the action.

### VALIDITY OF RULES

If any part of the Charter, the Ordinance, these rules or subsequent amendments thereof is held to be invalid, every other part not so held shall continue in full force and effect as if the invalid part had not been included.

### EFFECTIVE DATE OF RULES

All rules and amendments shall become effective upon the date of their adoption by the City Administrator or upon the date specified by the City Administrator.

### EQUAL EMPLOYMENT OPPORTUNITY

In recognition of the importance and responsibility of our commitment to equal employment opportunities to all present and future employees and to fully utilize human resources available, it is the City's policy:

To recruit, hire, train and promote persons in all job classifications without regard to race, religion, color, creed, national origin, ancestry, sex, age, or disability except where sex, age, or physical or mental condition is a bona fide occupational qualification.

## RULE 3 - UNCLASSIFIED SERVICE

The unclassified service shall comprise all of the following positions: City Administrator and assistants, all directors of departments, members of appointive commissions and boards, municipal court judge, city attorney and assistant attorneys, city clerk, personnel officer, financial, research, legal and other technical personnel employed on special occasions and those who may be employed in an advisory capacity. Subject to the provisions of the City Charter, and any applicable City ordinances, members of the unclassified service and are at-will officials or employees may be dismissed without cause.

Part-time, seasonal, and temporary employees are in the unclassified service, are at-will employees and may be dismissed without cause.

There is no probationary period associated with appointments to unclassified service.



# ST. CHARLES POLICE DEPARTMENT

# *CODE OF CONDUCT*

Approved by: Chief G. Paul Corbin

I.  AUTHORITY

    A.  This Code of Professional Conduct of the St. Charles Police Department, herein referred to as the "Code," is promulgated by the Chief of Police as department director of the police department under the general supervisory duties assigned by the City Administrator, and as authorized by the City Charter.  This Code shall supersede other inconsistent regulatory directives of the police department; and may, from time to time, be revised or amended.

    B.  This Code shall apply to all members of the police department whether on or off duty. As used herein, the term "member" shall include all employees of the police department. The term "officer" or "sworn member" however shall include only those employees commissioned as police officers by the City of St. Charles and qualified as peace officers pursuant to the statutes of the State of Missouri.

    C.  As may be applicable, this Code shall also apply to all police department volunteers, interns, and auxiliary police officers, or otherwise.

II.  PURPOSE

The Code is promulgated to ensure the professionalism and high ethical conduct of all department members, promote departmental efficiency, facilitate the fair and appropriate imposition of discipline, and to enhance public confidence in the operation of the police department and the integrity of its members.

III.  DISCIPLINARY ACTIONS

    A.  VIOLATION OF CODE

        Violation of this Code, the Personnel Rules, directives, policies, procedures, and ordinances of the City of St. Charles and laws of Missouri and the United States, shall subject the offending member to the corrective or disciplinary action.

    B.  BURDEN OF PROOF

        Disciplinary action shall be imposed in compliance with the Personnel Rules of the City. The burden of proof shall be on the employer to establish each violation by a preponderance of evidence, however, strict compliance with the rules of evidence attending judicial proceedings shall not apply.

    C.  HONOR CODE

        It shall be the obligation of every member to disclose all relevant information concerning any violation which could be the basis of any corrective or disciplinary action when the member has either committed such violation or has a reasonable suspicion that another member has committed such violation. <u>Disclosure in writing shall promptly be made to the member's immediate supervisor with a copy furnished to Human Resources.</u>  Failure to make such disclosure shall constitute an independent violation of the Code.



DEFENDANT'S
EXHIBIT

D

# City of Saint Charles
# Employee Personnel Manual

# Saint Charles, Missouri
# Effective September 1,1999

UNLAWFUL DISCRIMINATION COMPLAINT PROCEDURE (Continued)

      (5)    May cross-examine opposing witnesses;

      (6)    May withdraw the request for a meeting in writing before the hearing begins;

      (7)    Shall be granted a written decision or findings from the City Administrator, if so requested.

(c)    The City Administrator shall make a written record of all information given at the meeting and shall make findings and conclusions and provide the record to the City Council at its next regularly scheduled meeting.

(d)    The complainant may appeal the findings and conclusions to the City Council.

(e)    If there is an appeal then at its next regular meeting, which is at least ten (10) days from the date of the appeal, the City Council shall review the record prepared and submitted by the City Administrator, and the City Council shall consider the complaint.

(f)    If it is determined that the complaint is valid the City Council shall order adjustments to the program, service, policy or structure to assure that the discriminatory practice is discontinued and may order what remedial action to be taken in regard to the specific complainant.

## EMPLOYEE PRIVACY

The City firmly believes in respect for the rights and dignity of each employee. The City sets forth its goal as protection and enhancement of the individual employee's right to privacy. To achieve this goal, the City adopts the following principles:

(a)    The City will request and retain only personal information required for business necessity or legal purposes.

(b)    The principal guideline for gathering such personal information will be a business "need to know" basis.

(c)    The City will protect the confidentiality of all personal information in its records and files.

(d)    Employees have the right of access to their personal information in City personnel records and files during normal business hours. However, all the contents of the file shall remain the property of the City of St. Charles, and the City is under no obligation to provide copies of the contents unless required by law. Employees shall not have right of access to actual tests or rating sheets.

(e)    The City will limit personal information to outside sources without the employee's written approval except for employment verification and legal requirements.

(f)    The City requires each employee to adhere to these policies and practices. Violations are subject to appropriate disciplinary action.



DEFENDANT'S
EXHIBIT

B

# City of Saint Charles
# Employee Personnel Manual

## Saint Charles, Missouri
## Effective September 1,1999

## 2.9 DISCLOSURE OF EMPLOYEE INFORMATION

(a) All requests for information about a current, retired, or terminated employee must be referred to the Personnel Officer. The Personnel Officer will obtain the written consent of the individual before releasing any information contained in a current or former employee's file to an outside source. Information that will be provided is limited to the information contained in the personnel file.

Exceptions to this rule include:

(1) Disclosure of dates of employment, job title, position and salary/wages.

(2) Duly authorized requests served from law enforcement agencies, including investigations, summons, subpoena, and judicial orders. The Personnel Officer may but need not notify the employee in these cases.

(b) For three years following termination of employment, the City Administrator and Personnel Officer may release only information as to an employee's position, title and length of service to the city unless such release of records is to the employee, a governmental agency, or pursuant to court order.

(c) Records of former employment more than three years following termination shall be destroyed or reduced to only that information necessary for pension or personnel statistical records as the Personnel Officer shall determine.

## 2.10 PROTECTION OF CONFIDENTIALITY

To protect the confidentiality of all personnel files and records, the Personnel Officer and other appropriate staff shall develop personnel systems designed to protect all information, documents, and computer storage tapes and devices to prevent unwarranted and unauthorized disclosure. Unauthorized discussion, reproduction, or dissemination of employee records and files will be cause for immediate discharge or other discipline. Each department director and supervisor will maintain employee records in a secure, locked location and refuse access to anyone except as otherwise provided by the City's employee privacy policy and procedures.

## 2.11 RECORDS CLOSED TO PUBLIC INSPECTION

(a) The following records of the City Administrator, the Personnel Board and the Personnel Office are closed records pursuant to Chapter 610 of the Revised Statutes of Missouri:

(1) applications and resumes if applicants for City employment;
(2) employment references;
(3) re-occuring testing and examination materials;
(4) eligibility lists;
(5) personnel record cards of specific employees;
(6) employee grievance files;
(7) employee complaint and consultation files;

Search:

[              ] [Search]

[Choose search form ▾]

Links:
[Go to ... ▾]

Document
Previous Chapter
Next Chapter
Contents
Synchronize Contents
Framed Version

| City of St. Charles Code of Ordinances |
|---|

TITLE III: ADMINISTRATION

CHAPTER 36: PERSONNEL CODE AND EMPLOYMENT POLICIES

# CHAPTER 36: PERSONNEL CODE AND EMPLOYMENT POLICIES

DEFENDANT'S EXHIBIT
F

Section

### General Provisions

36.01   Title and scope

36.02   Purpose; appointments and promotions

36.03   Equal employment opportunity

36.04   Human Resources Director to administer

36.05   Personnel procedures manual

36.06   Classification of positions

36.07   Employee compensation

36.08   Probationary period

36.09   Medical examinations

36.10   Nepotism

36.11   Employing residents

36.12   Educational assistance program

36.13   Suspensions and dismissals; appeals

### Personnel Board

36.25   Established

36.26   Qualifications; oath of office

then only on the same terms as are offered to the public.  ('81 Code, § 2-351)

(Ord. 83-23, approved 3-30-83)  Penalty, see § 10.99

## § 36.43  ENGAGING IN PRIVATE INTEREST.

No employee of the city shall engage in any business or transaction or have a financial or other personal interest, direct or indirect which is incompatible with the proper discharge of his or her official duties in the public interest or would tend to impair his or her independence or judgement or action in the performance of his or her official duties.

('81 Code, § 2-345)  (Ord. 83-25, approved 3-30-83)  Penalty, see § 10.99

## § 36.44  DISCLOSING PRIVATE INTEREST IN PROPOSED CITY LEGISLATION.

An employee of the city who has a financial or other private interest in any proposed city legislation shall disclose on the records of the council the nature and extent of such interest.

('81 Code, § 2-346)  (Ord. 83-23, approved 3-30-83)

## § 36.45  ACCEPTING GIFTS FROM PERSON DEALING WITH CITY.

No employee of the city shall accept any gift, whether in the form of service, loan, thing, promise, or in any other form from any person which, to his knowledge, is interested, directly or indirectly, in any manner whatsoever, in business dealings with the city, which would affect the performance or non-performance of duty for personal or financial gain.

('81 Code, § 2-347)  (Ord. 83-23, approved 3-30-83)

## § 36.46  DISCLOSURE OR IMPROPER USE OF CONFIDENTIAL INFORMATION.

No employee of the city shall disclose confidential information concerning the property, government, employees or affairs of the city, nor shall he or she use or seek such information to advance the financial or other private interest of himself or others, or to damage or impede city business or fellow employee(s).

('81 Code, § 2-348)  (Ord. 83-23, approved 3-30-83)  Penalty, see § 10.99

organization, political action committee, or political club which supports or opposes any such candidate.

(5)   City employees shall not be appointed, discriminated against or retained based upon their activity, or lack thereof, in any political campaign, or based upon their support, or lack thereof, of any candidate for a City office. City employees shall not be coerced, or subjected to any pressure or influence, by any person who is an employee or elected official of the City, or anyone related to any such person, to take part in a political campaign, to support or oppose a particular candidate or ballot measure, to solicit votes for or against a particular candidate or ballot measure, or to solicit or contribute funds to support or oppose any candidate or ballot measure.

('81 Code, § 2-352)  (Ord. 83-23, approved 3-30-83; Am. Ord. 85-24, approved 3-20-85; Am. Ord. 85-88, approved 7-19-85; Am. Ord. 99-386, approved 11-18-99; Am. Ord. 01-29, approved 2-23-01)

## § 36.50  SUPPLEMENTAL RULES;  PROCEDURES FOR INTERPRETATION.

(A)   *Supplemental rules.*  Each department head with the approval of the City Administrator shall supplement the employees' code of ethics with provisions which would be uniquely peculiar or applicable only to the department.  ('81 Code, § 2-353)

(B)   *Procedures for interpretation.* Any question regarding the application or interpretation of the employees' code of ethics to a specific action, case situation or event shall be brought to the attention of the City Administrator by the employee or employees concerned. The City Administrator shall dispose of each by appropriate administrative decision. The employee(s) shall be notified of such decision in writing with a copy forwarded to the Human Resources Department for filing in the employee's personnel records.  ('81 Code, § 2-354)

(Ord. 83-23, approved 3-30-83; Am. Ord. 02-128, approved  5-28-02)

## § 36.51  ENFORCEMENT; DISCIPLINARY ACTION.

Any employee of the city violating any section of this code of ethics (§§ 36.40 through 36.50) may be subject to dismissal and such other disciplinary or punitive administrative action as may be appropriate, and may also be subject to such other penalties as may be provided by city ordinance or state or federal law.

('81 Code, § 2-355)  (Ord. 83-23, approved 3-30-83)

# SUBCHAPTER: