# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

THOMAS MAYER,                         )
                                      )
    Plaintiff,                    )    Cause No.: 4:04CV00655HEA
                                      )
v.                                    )    JURY TRIAL REQUESTED ON ALL
                                      )    CLAIMS TRIABLE BY JURY
CITY OF ST. CHARLES, MISSOURI, et al )
                                      )
    Defendants.                   )

## FOURTH AMENDED COMPLAINT

COMES NOW, Plaintiff, Thomas Mayer, by and through counsel, and for his Fourth

Amended Complaint, against all Defendants named herein, states to the Court the following:

## JURISDICTION AND VENUE

This Court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. §1983, 42 U.S.C.

§1988, 42 U.S.C. § 300bb and the Declaratory Judgment Act, 28 U.S.C. §2201, 2202, 28 U.S.C.

§ 1331.  This Court also has jurisdiction over the pendent claims arising under state law pursuant

to 28 U.S.C. §1343(a)(3).  Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

## PARTIES

1.    At the times relevant hereto, Plaintiff Thomas Mayer was a resident of St. Louis

County, Missouri, was a Citizen of the United States of America, and was residing within the

boundaries of the Eastern District of Missouri.

2.    At the times relevant hereto, Defendant, City of St. Charles, Missouri, is and was a

municipal corporation duly organized and existing under the laws of the State of Missouri, located in

St. Charles County, Missouri, and located within the boundaries of the Eastern District of Missouri.

3.    John Gieseke,  Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert

Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer and Joe Koester are defendants in their individual capacities and in their official capacities as City Council Members. Michael Valenti is a defendant in his individual capacity and in his official capacity as the Interim City Administrator and executive officeholder for the City of St. Charles.

4.      All of the aforementioned Defendants reside within the boundaries of the Eastern District of Missouri.

5.      All of the acts and occurrences herein set forth took place within the boundaries of the Eastern District of Missouri.

## COMMON FACTUAL ALLEGATIONS

1.      Plaintiff was employed as a commissioned police officer with the City of St. Charles' Police Department ("Department") for approximately twenty four (24) years, from May 4, 1981 to April 21, 2005. In 1994, Plaintiff was promoted to the rank of Corporal and to Sergeant in 2002.

2.      At the times relevant hereto, Defendant City's agents, including its Council Members and City Administrator and Chief of Police Timothy Swope and Major Robert Boerding, were the individuals responsible for, and were consulted about and approved and executed, all employment actions taken against Plaintiff, as fully set forth below.

3.      By all accounts of his supervisors in the Department and Department performance evaluations, Sergeant Mayer's performance has been excellent.

4.      The St. Charles City Charter states that City Council members are not to have direct influence on the day-to-day operations of the City.

5.      In 2003, City Council members regularly contacted the Chief of Police, and not

2

the City Administrator, as required by the Charter, regarding operations of the City and specifically the actions of Plaintiff Mayer. Pursuant to the Charter, Council members were to contact the City Administrator regarding the day-to-day operations of the City. The City Administrator was the supervisor of the Chief of Police.

6.     Sergeant Mayer is and has been President of the Missouri State Lodge of the Fraternal Order of Police ("FOP") for the last eight years and President of Lodge 15 of the Missouri Fraternal Order of Police for the past four years and has been a vocal leader for the FOP.

7.     Sgt. Mayer sent out leaflets and information to voters of St. Charles in support of Mayor York in her effort for reelection in 2002, acting in his capacity as a concerned citizen.

8.     The FOP and Sergeant Mayer did not endorse any of the controlling majority Defendant Council members in their run for Mayor or Council member for the City of St. Charles.

9.     Since April, 2003, Plaintiff has been singled out for numerous unfounded investigations by City Council members, specifically by Heopfner and Geiseke, based on Plaintiff's assertion of his free speech and free association rights as President of the FOP. These unfounded investigations and the actions stemming from these investigations have caused Plaintiff Mayer serious physical symptoms of stress requiring medical attention, and resulting in a medical leave of absence from the Department.

10.     In April, 2003, the FOP acted through its attorneys to complain regarding the actions of City Council Member Hoepfner in releasing police officer names and addresses. Defendant Hoepfner complained publicly about the FOP's criticism of him.

3

11.     Pursuant to an agreement between Sergeant Mayer and the former Chiefs of Police and City Administrator, Sergeant Mayer was granted 200 hours of FOP administrative time for use on FOP matters.  It was further understood and agreed that the benefit of 200 hours of administrative time would be continuing in nature during Plaintiff's time as President of the FOP.  That agreement was formalized, in writing, by the Chief of Police and the City Administrator, including provisions for use of the administrative time and was adopted by the City as its policy regarding the use of FOP administrative time for Sergeant Mayer.

12.     In 2003, a non-FOP officer, Ron Lloyd, provided to Council Member Geiseke FOP letters and postings that were critical of Geiseke's voting record and concerned Geiseke's lack of support for FOP concerns.

13.     Retaliatory investigations of Sergeant Mayer resulted, which were initiated at the request of Councilmembers Geiseke and Heopfner and included investigation of Sergeant Mayer's use of his 200 hours of administrative time provided to him by the City on a yearly basis.  An investigation was performed based on the allegation that the administrative time was a waste of City money and Sergeant Mayer was making improper use of his administrative time.

    A.     The Deputy Chief performed an investigation along with the Director of Professional Standards Unit.

    B.     Sergeant Mayer was exonerated of any wrongdoing and time and effort was asserted in performing this and numerous other investigations.

    C.     Chief Corbin believed that the FOP administrative hours were a great honor for the City and brought the Department and City recognition.

    D.     The investigation of Sgt. Mayer's use of FOP administrative time did not

focus on any other employee's use of similar type of administrative time.

E.    In 2003, the City Administrator and City Council, following Councilmembers Geiseke and Heopfner's complaints and the Department investigation, decided to maintain Plaintiff's FOP administrative time.

F.    In May, 2004, the City Council voted 10-0 to eliminate Sergeant Mayer's benefit of 200 hours of paid administrative time in a Motion presented by Councilmembers Geiseke and Heopfner.

14.    Councilman John Geiseke brought a complaint against Sergeant Mayer regarding Sergeant Mayer's use of his City of St. Charles Police Department cellular telephone and Councilman Geiseke directed the Department to conduct an investigation.  All officers in the Department have a Department cellular telephone.

A.    An investigation was initiated regarding this complaint and the investigation was carried out by Major Gooch, former Acting Chief of Police, and the Professional Standards Unit.

B.    The investigative report determined that Sergeant Mayer was exemplary in his use of his Department cellular telephone.

C.    No other officer other than Sergeant Mayer was investigated at the request of a Councilman regarding Department cellular telephone use.  The Council Members claimed that Sergeant Mayer was using his Department cellular telephone for FOP business.

D.    The cellular telephone records of other officers were compared with Sergeant Mayer's cellular telephone records in determining that Sergeant

5

Mayer's use of his cellular telephone was exemplary.

15.     There was an inquiry and investigation into Sergeant Mayer's use of his Department police vehicle.  City Council Members claimed that Sergeant Mayer used his Department vehicle for FOP business.

>    A.     The investigation revealed that Sergeant Mayer had an FOP vehicle and there was no evidence that a Department vehicle was used for FOP business.

>    B.     No inquiry was made into the use of a Department vehicle for personal use by any other officers at the same time the investigation of Sergeant Mayer occurred.

16.     On or about June 15, 2004, the City Council approved an Ordinance placing restrictions on use of police department vehicles.

>    A.     Sergeant Mayer was a member of the TACT Team for the City of St. Charles Police Department.

>    B.     While officers of dedicated units, including mounted patrol officers and K-9 officers were permitted to have an off-duty vehicle regardless of residency, the TACT members were prohibited from having a department vehicle regardless of residency of the TACT Team.

>    C.     The adverse employment actions directed at Sergeant Mayer by removing take home vehicles from the TACT Team members was in retaliation for Sergeant Mayer's protected speech activities as President of the FOP as set forth in more detail herein.

6

      D.      Former Chief of Police for the City of St. Charles has noted that the removal of take home vehicles from TACT Team members results in a less efficient police department that is unable to timely respond to crisis situations.

17.     The City Council voted in 2003 to place a limitation on officers who lived outside of St. Charles that they would not have use of a take-home vehicle if they lived more than 30 minutes outside of the St. Charles city limits.

      A.      Sergeant Mayer lives less that 30 minutes outside St. Charles but had his vehicle taken away from him and the actions of the Council were focused on Sergeant Mayer and the removal from him of his take-home vehicle.

      B.      The action of removing vehicles from members of the TACT team resulted in decreased response time and decreased Department productivity.

      C.      Ultimately, the TACT team was disbanded on or about December 14, 2004.

18.     In 2003, there was also an investigation into Sergeant Mayer's use of sick leave and earned overtime initiated by Councilman Hoefner.

19.     All of the allegations made by members of the City Council were investigated either by Major Gooch, former Acting Chief of Police, or the Professional Standards Investigation Department and at no time was Sergeant Mayer found to have committed conduct unbecoming of an officer.  As  a result, Sergeant Mayer was exonerated in all investigations by his Department and his Chief of Police.

20.     As a result of these continued unwarranted investigations of Sergeant Mayer, the City established a policy of harassing Sergeant Mayer.  This harassment of Sergeant Mayer has manifested itself, among other things, by Sergeant Mayer losing his use of agreed upon administrative time and losing a Department take-home vehicle.  This has negatively affected Sergeant Mayer's health, including loss of sleep, high blood pressure and increased stress, resulting in ongoing medical treatment.

21.     Plaintiff Mayer has further endured damage to his reputation as a law enforcement officer, and as citizen and as President of the Fraternal Order of Police, as a result of the Defendants' conduct.

22.     All allegations against Plaintiff Mayer were determined to have no basis in fact.

23.     Based on information and reasonable belief, former Chairman of the City Council, Bob Kneemiller, informed the Council that he considered the Council's actions to be a form of harassment directed toward Sergeant Mayer.

24.     Several of the Defendants' herein-mentioned actions toward Sergeant Mayer were initiated under the pretext of ensuring budget restraints were followed.  Sergeant Mayer was used by the City Council as a scapegoat for perceived budget difficulties of the City of St. Charles while the actions directed toward Sgt. Mayer were truly based on his associational, free speech and political activities as President of the FOP.

25.     All of the actions taken by the City Council Members in concert and individually, were done with the intent to unlawfully harass Sergeant Mayer and force and pressure his resignation from employment with the City of St. Charles.

26.     The actions of the Defendants will and have had a chilling effect on others and

8

Plaintiff in supporting the FOP and political opponents of the Defendants.

27.    Neither the City Administrator nor City Council acted to pursue or investigate Plaintiff's complaints of Defendants' civil rights violations that he directed and sent to the City pursuant to Section 2.7 of the City Charter.

28.    City Council members acted in concert with City police officers and employees and journalists for the First Capitol News to publish articles regarding Sergeant Mayer that defamed Sergeant Mayer and contained false information and information that was in reckless disregard for the truth and the authors and individuals involved knew of the false and misleading information contained within the published articles.

29.    In council meetings in May, 2004 and published in the May 22-28, 2004 issue of the First Capital News, Councilman Hoepfer stated that Sergeant Mayer was illegally "double dipping" by receiving FOP administrative hours from the City, that Sergeant Mayer was violating his oath as a police officer, and that officers from other departments had been incarcerated for such "double dipping" and that these actions amounted to conduct unbecoming of a police officer.  In 2003, Councilman Heopfner stated that the FOP stood for "fleecing of the public".

A.    Plaintiff, through his legal representative, acted to publicly respond that Sergeant Mayer had not illegally double dipped and that he was not violating his oath as a police officer and that his conduct was not similar to any officer incarcerated for double dipping.

30.    The adverse actions taken against Sergeant Mayer were the result of Sergeant Mayer's political support of City of St. Charles Mayor York, political opposition of Council

Members Geiseke and Heopfner and his association with the FOP as its President.

31.     The adverse actions against Sergeant Mayer were further the result of Council Members Geiseke and Heopfner's opposition to Sergeant Mayer's political and public actions as President of the FOP and Lodge 15 and as a member and former President of the St. Charles Police Officers' Association.

32.     Council Member Geiseke sought the endorsement of the St. Charles Police Officers' Association (SCPOA) for the April, 2004 City Council election.  SCPOA denied Geiseke's request for endorsement.

33.     While Sergeant Mayer was on medical leave, counsel for Sergeant Mayer sent to the St. Charles City Attorney Plaintiff's treating physician's  medical reports.  Based on understanding and reasonable belief, the records were thereafter shared with the City Council during closed session.  After the City Council meeting, Plaintiff's medical records were referred to as part of a First Capitol News story regarding Plaintiff Mayer's medical condition.

34.     On August 10, 2004 at a St. Charles City Council meeting, the St. Charles City Council authorized, pursuant to votes of the Council, Chet Pleban and Pleban & Associates, LLC and Paul Simon and Helfrey, Simon & Jones, P.C. to pursue possible counterclaims and third party claims in this case.  Further, the Council authorized Chet Pleban and Pleban & Associates, LLC and Paul Simon to conduct an internal investigation of possible violations of federal and state law and the City Personnel Code and City Charter by Thomas Mayer as a result of Plaintiff Thomas Mayer filing this lawsuit.

35.     The City Council is prohibited pursuant to its own Charter from interfering with the administration of City government by dealing directly with the affairs of an individual

employee.  Section 3.7(c) PROHIBITIONS.  The City Council is limited in its authority to investigate to that of the affairs of any city department, office or agency, but not that of an individual employee.  Section 3.13.

36.    The authorization of Chet Pleban and Pleban & Associates, LLC and Paul Simon and Helfrey, Simon & Jones, P.C. to conduct an internal investigation of possible violations of federal and state law and the City Personnel Code and City Charter by Thomas Mayer is in direct violation of the Defendant's own City Charter and authorized by the Council in deprivation of Plaintiff's right to file a petition to redress grievances against the government on matters of public concern.

37.    Chet Pleban and Pleban & Associates, LLC and Paul Simon and Helfrey, Simon & Jones, P.C. are willful participants in joint action with the City of St. Charles and its Council members to retaliate against plaintiff for filing a petition to redress grievances against the government on matters of public concern.

38.    Chet Pleban and Pleban & Associates, LLC and Paul Simon and Helfrey, Simon & Jones, P.C. agreed to take on the role of conducting an internal investigation of possible violations of federal and state law and the City Personnel Code and City Charter by Thomas Mayer as a result of Plaintiff Thomas Mayer filing this lawsuit and therefore they have an official policy to inflict injury on Plaintiff in violation of the City Charter.

39.    In September 2004, approximately seventy three (73) officers for the City of St. Charles filed hostile work environment complaints against Council Member Hoepfner based on negative comments he made in the First Capitol News regarding police officers for the City of St. Charles.  The investigation was turned around on the officers and conducted as an

investigation of the officers wellness for continued duty.  Based on information and belief, no investigation or action was taken against Council Member Hoepfner.

40.     On or about April 5, 2005, the City Council voted to eliminate the Personnel Board.  The Personnel Board heard employee appeals of decisions of the City Administrator if the employee was not satisfied.  See former Rule 14.3.

41.     The City Personnel Board was composed of six members. Members of the Board shall be appointed by the Mayor with the consent of a majority of all members elected to the City Council. Every year two members shall be appointed for a term of three years. The Mayor, with the consent of a majority of all the members elected to the City Council, shall fill any vacancies for any unexpired term. A member of the Board may be removed for cause in the same manner as prescribed by ordinance for the removal of other city appointive officers. Members of the Police and Fire Personnel Board in office as of adoption of this code shall serve, comprise and continue as a member of the personnel board until each individual member's term has expired and a successor has been appointed.  See Former Rule 36.25.

42.     This policy change took effect on April 13, 2005, approximately one (1) week prior to Sergeant Mayer being terminated.

43.     After Plaintiff Mayer filed his lawsuit to address matters of public concern, based on information and belief, Defendants began following Plaintiff Mayer while at work, over-scrutinizing his conduct and continued investigating the conduct of Plaintiff Mayer.

44.     Based on information and belief, this conduct included City Council Members directing the City Administrator and others to follow Plaintiff Mayer.

45.     Plaintiff Mayer's employment with the City of St. Charles was terminated on or

12

about April 21, 2005.

46.     Plaintiff Mayer's termination was a direct result of his actions of speaking on matters of public concern, joining with others to speak on matters of public concern, and filing a lawsuit to address matters of public concern.

47.     The reasons for Plaintiff's termination are pretextual and/or motivated by Plaintiff's above-stated activities of a public nature.  Further, the discipline imposed against Plaintiff was based on over-scrutiny of Plaintiff and based upon selective enforcement of discipline against Plaintiff.

48.     Plaintiff's health care benefits were terminated following his termination. Plaintiff failed to receive timely notice, either verbal or written, of his right to elect to continue coverage under his health care benefits plan.  In addition to his termination, the refusal by Defendant City of St. Charles to provide continuation of medical benefits coverage notice is further retaliation for Plaintiff asserting his rights to freedom of speech and association and in retaliation for filing a petition to redress grievances on matters of public concern.  The refusal by Defendant City of St. Charles to provide continuation of medical benefits coverage notice also qualifies as a further adverse employment actions taken against Plaintiff.

49.     Defendant City of St. Charles failed to timely provide information to the St. Louis Metropolitan Police Department in retaliation for Plaintiff asserting his rights to freedom of speech and association and in retaliation for filing a petition to redress grievances on matters of public concern.  Defendant City of St. Charles actions constitute further adverse employment actions taken against Plaintiff.

### COUNT I
### 42 U.S.C. §1983
### VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREE SPEECH

COMES NOW, Plaintiff and in support of Count I of his Complaint against Defendant, City of St. Charles and John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti, in this cause of action, states as follows:

1. Plaintiff hereby adopts and incorporates by reference, as if more fully set forth herein, each and every paragraph of his Common Factual Allegations, as paragraph 1 of Count I of his Complaint.

2. Plaintiff's complaints, comments and actions herein described represent speech which was and is protected by the First Amendment of the United States Constitution and the Fourteenth Amendment.

3. Plaintiff's speech was protected because he was speaking as a concerned citizen, commenting on matters of public concern and performing actions of a political nature and of a public purpose.

4. The content of his speech was protected, and a matter of public concern because he was acting in support and opposition of political office holders and in support of a public organization commenting on matters of public concern.

5. Plaintiff's interest in commenting on matters of public concern outweigh any interest Defendants may have had in preventing and/or restricting such speech.

6. Plaintiff's written and oral complaints did not render the police department inefficient,

14

nor did Plaintiff's complaints disrupt the police department or City workplace in any identifiably significant manner.

7.   Plaintiff's loss of his department police vehicle, use of administrative hours, numerous unwarranted investigations done at the behest of City Council members, false statements by the Defendants and ultimately his termination and termination of medical benefits qualify as adverse employment actions against Plaintiff, as authorized and approved by the Defendants acting under color of law.

8.   Defendant City of St. Charles failed to timely provide information to the St. Louis Metropolitan Police Department in retaliation for Plaintiff asserting his rights to freedom of speech and association and in retaliation for filing a petition to redress grievances on matters of public concern.  Defendant City of St. Charles actions constitute further adverse employment actions taken against Plaintiff.

9.   As a direct and proximate result of the aforesaid conduct of Defendants, taken under color of law, Plaintiff has sustained lost wages and other benefits of employment, pain, suffering, humiliation, embarrassment, loss of reputation, diminution of self esteem, and loss of sleep and appetite.

10.  The conduct of the individual Defendants, under color of law, as aforesaid was wanton, willful and showed reckless indifference for Plaintiff's constitutional rights, as set forth above.

11.  The conduct of the agents of Defendant City, acting under color of law, established an unlawful custom and policy of repeatedly retaliating against Plaintiff in violation of Plaintiff's constitutional rights.

WHEREFORE, Plaintiff asks the Court to enter judgment in his favor, and for the following specific relief:

1.  For Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti compensate and pay Plaintiff's lost wages and other benefits of employment, liquidated damages, front-pay damages, and/or reinstatement with full back-pay and lost benefits of employment.

2.  That Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay Plaintiff damages to compensate him for the pain and suffering he has endured and loss of reputation as aforesaid, due to their actions and omissions, as set forth above.

3.  That the individual Defendants John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay punitive damages.

4.  That Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti be ordered to pay Plaintiff's attorneys' fees and costs of court.

5.    For such other and further relief as the Court deems just and proper.

**COUNT II**
**42 U.S.C. §1983**
**VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREE ASSOCIATION**

COMES NOW, Plaintiff and in support of Count II of his Complaint against Defendant, City of St. Charles and John Gieseke,  Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti, in this cause of action, states as follows:

1.    Plaintiff hereby adopts and incorporates by reference, as if more fully set forth herein, each and every paragraph of his Common Factual Allegations and Count I, as paragraph 1 of Count II of his Complaint.

2.    Plaintiff's associational activity is protected because he was acting in support of the FOP and in support and opposition to political office holders to redress concerns held by an association protected by the First Amendment.  The associational activities also involved the posting of FOP concerns that were provided to Councilman Geiseke, voice opposition in May, 2003 by the FOP to denied officer pay raises by the City Council, and FOP opposition to the City Council proposal of limiting officer take-home vehicle to local residents.

3.    Plaintiff's interest in associating with the FOP, and in his political association, regard matters of public concern, and outweigh any interest Defendants may have in preventing such speech.

4.    Plaintiff's associational activities did not render the police department inefficient, nor did Plaintiff's complaints and associational activity disrupt the police department or City workplace in any identifiably significant manner.

17

5.   Plaintiff's loss of his department police vehicle, use of administrative hours, numerous unwarranted investigations done at the behest of City Council members, false statements by the Defendants and termination and termination of medical benefits qualify as adverse employment actions against Plaintiff, as authorized and approved by the Defendants acting under color of law.

6.   Defendant City of St. Charles failed to timely provide information to the St. Louis Metropolitan Police Department in retaliation for Plaintiff asserting his rights to freedom of speech and association and in retaliation for filing a petition to redress grievances on matters of public concern.  Defendant City of St. Charles actions constitute further adverse employment actions taken against Plaintiff.

7.   As a direct and proximate result of the aforesaid conduct of Defendants, taken under color of law, Plaintiff has sustained lost wages and other benefits of employment, pain, suffering, humiliation, embarrassment, loss of reputation, diminution of self esteem, and loss of sleep and appetite.

8.   The conduct of the individual Defendants, under color of law, as aforesaid was wanton, willful and showed reckless indifference for Plaintiff's constitutional rights, as set forth above.

9.   The conduct of the agents of Defendant City, acting under color of law, established an unlawful custom and policy of repeatedly retaliating against Plaintiff in violation of Plaintiff's constitutional rights.

WHEREFORE, Plaintiff asks the Court to enter judgment in his favor, and for the following specific relief:

1. For Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti compensate and pay Plaintiff's lost wages and other benefits of employment, liquidated damages, front-pay damages, and/or reinstatement with full back-pay and lost benefits of employment.

2. That Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay Plaintiff damages to compensate him for the pain and suffering he has endured and loss of reputation as aforesaid, due to their actions and omissions, as set forth above.

3. That the individual Defendants John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay punitive damages.

4. That Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti be ordered to pay Plaintiff's attorneys' fees and costs of court.

5. For such other and further relief as the Court deems just and proper.

19

**COUNT III**
**42 U.S.C. §1983**
**VIOLATION OF THE FIRST AMENDMENT RIGHT TO BE FREE**
**OF RETALIATION FOR FILING A PETITION TO REDRESS GRIEVANCES**
**ON MATTERS OF PUBLIC CONCERN**

COMES NOW, Plaintiff and in support of Count III of his Complaint against Defendant,
City of St. Charles and John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark
Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and
Michael Valenti, in this cause of action, states as follows:

1. Plaintiff hereby adopts and incorporates by reference, as if more fully set forth herein,
each and every paragraph of his Common Factual Allegations and Count I and Count II, as
paragraph 1 of Count III of his Complaint.

2. Plaintiff's Complaints filed in the United States Federal Court for the Eastern
District of Missouri touched on matters of public concern, as detailed more specifically in said
Complaints and in this Complaint filed with the Court.

3. On August 10, 2004 at a St. Charles City Council meeting, the St. Charles City
Council authorized, pursuant to votes of the Council, Chet Pleban and Pleban & Associates, LLC
and Paul Simon and Helfrey, Simon & Jones, P.C. to pursue possible counterclaims and third
party claims in this case. Further, the Council authorized Chet Pleban and Pleban & Associates,
LLC and Paul Simon and Helfrey, Simon & Jones, P.C. to conduct an internal investigation of
possible violations of federal and state law and the City Personnel Code and City Charter by
Thomas Mayer as a result of Plaintiff Thomas Mayer filing this lawsuit.

4. The City Council is prohibited pursuant to its own Charter from interfering with

20

the administration of City government by dealing directly with the affairs of an individual employee. Section 3.7(c) PROHIBITIONS. The City Council is limited in its authority to investigate to that of the affairs of any city department, office or agency, but not that of an individual employee. Section 3.13.

5. The authorization of Chet Pleban and Pleban & Associates, LLC and Paul Simon and Helfrey, Simon & Jones, P.C. to conduct an internal investigation of possible violations of federal and state law and the City Personnel Code and City Charter by Thomas Mayer is in direct violation of the Defendant's own City Charter and authorized by the Council in deprivation of Plaintiff's right to file a petition to redress grievances against the government on matters of public concern.

6. Chet Pleban and Pleban & Associates, LLC and Paul Simon and Helfrey, Simon & Jones, P.C. are willful participants in joint action with the City of St. Charles and its Council members to retaliate against plaintiff for filing a petition to redress grievances against the government on matters of public concern.

7. Chet Pleban and Pleban & Associates, LLC and Paul Simon and Helfrey, Simon & Jones, P.C. agreed to take on the role of conducting an internal investigation of possible violations of federal and state law and the City Personnel Code and City Charter by Thomas Mayer as a result of Plaintiff Thomas Mayer filing this lawsuit and therefore they have an official policy to inflict injury on Plaintiff in violation of the City Charter.

8. Plaintiff's filing of Complaints did not render the police department inefficient, nor did Plaintiff's complaints disrupt the police department or City workplace in any identifiably significant manner.

9. The unwarranted investigations by the Defendants under color of law and unauthorized by the Council qualify as adverse employment actions against Plaintiff.

10. As a direct and proximate result of the aforesaid conduct of Defendants, taken under color of law, Plaintiff has sustained lost wages and other benefits of employment, pain, suffering, humiliation, embarrassment, loss of reputation, diminution of self esteem, and loss of sleep and appetite.

11. Defendant City of St. Charles failed to timely provide information to the St. Louis Metropolitan Police Department in retaliation for Plaintiff asserting his rights to freedom of speech and association and in retaliation for filing a petition to redress grievances on matters of public concern. Defendant City of St. Charles actions constitute further adverse employment actions taken against Plaintiff.

12. The conduct of the individual Defendants, under color of law, as aforesaid was wanton, willful and showed reckless indifference for Plaintiff's constitutional rights, as set forth above.

13. Plaintiff's termination and termination of medical benefits qualifies as an adverse employment actions against Plaintiff, as authorized and approved by the Defendants acting under color of law.

14. The conduct of the agents of Defendant City, acting under color of law, established an unlawful custom and policy of repeatedly retaliating against Plaintiff in violation of Plaintiff's constitutional rights.

WHEREFORE, Plaintiff asks the Court to enter judgment in his favor, and for the following specific relief:

1.      For Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory
        Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller,
        Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti compensate
        and pay Plaintiff's lost wages and other benefits of employment, liquidated
        damages, front-pay damages, and/or reinstatement with full back-pay and
        lost benefits of employment.

2.      That Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory
        Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller,
        Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay
        Plaintiff damages to compensate him for the pain and suffering he has
        endured and loss of reputation as aforesaid, due to their actions and
        omissions, as set forth above.

3.      That the individual Defendants John Gieseke, Bob Hoepfner, Rory
        Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller,
        Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay
        punitive damages.

4.      That Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory
        Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller,
        Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti be ordered
        to pay Plaintiff's attorneys' fees and costs of court.

5.      For such other and further relief as the Court deems just and proper.

**COUNT IV**
**42 U.S.C. §1983**
**VIOLATION OF THE FIRST AMENDMENT RIGHT TO BE FREE**
**OF RETALIATION FOR FILING A PETITION TO REDRESS GRIEVANCES**
**ON MATTERS OF PUBLIC CONCERN**

COMES NOW, Plaintiff and in support of Count IV of his Complaint against Defendant, City of St. Charles and John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti, in this cause of action, states as follows:

1.  Plaintiff hereby adopts and incorporates by reference, as if more fully set forth herein, each and every paragraph of his Common Factual Allegations and Counts I, II and III, as paragraph 1 of Count IV of his Complaint.

2.  Plaintiff's Complaints filed in the United States Federal Court for the Eastern District of Missouri touched on matters of public concern, as detailed within the Complaints.

3.  On August 10, 2004 at a St. Charles City Council meeting, the St. Charles City Council authorized, pursuant to votes of the Council, Chet Pleban and Pleban & Associates, LLC and Paul Simon and Helfrey, Simon & Jones, P.C. to pursue possible counterclaims and third party claims in this case.  Further, the Council authorized Chet Pleban and Pleban & Associates, LLC and Paul Simon and Helfrey, Simon & Jones, P.C. to conduct an internal investigation of possible violations of federal and state law and the City Personnel Code and City Charter by Thomas Mayer as a result of Plaintiff Thomas Mayer filing this lawsuit.

4.  After Plaintiff Mayer filed his lawsuit to address matters of public concern, based on information and belief, Defendants began following Plaintiff Mayer while at work, over-

scrutinizing his conduct and continued investigating the conduct of Plaintiff Mayer.

5.     Based on information and belief, this conduct included City Council Members directing the City Administrator and others to follow Plaintiff Mayer.

6.     Plaintiff Mayer's employment with the City of St. Charles was terminated on or about April 21, 2005.

7.     Plaintiff Mayer's termination was a direct result of his actions of speaking on matters of public concerns, joining with others to speak on matters of public concern, and filing a lawsuit to address matters of public concern.

8.     The reasons for Plaintiff's termination are pretextual and/or motivated by Plaintiff's above-stated activities of a public nature.  Further, the discipline imposed against Plaintiff was based on over-scrutiny of Plaintiff and based upon selective enforcement of discipline against Plaintiff.

9.     These unwarranted investigations and selective enforcement of discipline that led to Plaintiff's termination did not follow the Complaint Review Policy provisions relating to the Office of Professional Responsibility's role within the Complaint Review process.  The specific provisions that Defendant City failed to follow are:

A.     § IV(D)(2), which states that "[u]pon completion of the investigation, the supervisor shall forward to the Office of Professional Responsibility: (a) [a] report of the alleged violation; (b) [a]ll documents and evidence relating to the investigation; (c) [r]ecommendations for further investigation or other disposition of the case."

B.     § IV(E) states that: "[t]he Office of Professional Responsibility shall have

25

primary supervisory responsibility for the review and investigation of all
complaints against employees."

    C.    § IV(F) enumerates the Office of Professional Responsibility with the
responsibility for the maintenance of a complaint log.

    D.    Complaint Review Policy § IV(G)(2) that allows "[a]ccused employees or
their supervisor may contact the Office of Professional Responsibility to
ascertain the status of an investigation and/or to a complaint filed against
them."

10.    These unwarranted investigations that led to Plaintiff's termination did not
follow the Complaint Review Policy provisions relating to the proper method in proceeding with
a serious violation, which may result in suspension, dismissal, or demotion, within the
Complaint Review process.  The specific provisions that Defendant City failed to follow are:

    A.    Complaint Review Policy § IV(J) requires that when a serious violation
has occurred, "a formal statement of charges and specifications shall be
prepared by the appropriate officer.  (2) The charging form shall include:
(a) [t]he particular rule(s) alleged to have been violated; (b) [t]he dates and
places where the alleged acts or omissions occurred; (c)[a] statement of
the alleged acts or omissions; (d) [t]he recommended disciplinary action;
(e) [t]he employee's right to appeal, and appellate procedures; (f) [p]re-
discipline hearing, date, time and place.

    1.    Defendant City failed to comply with the Complaint Review
Policy as the termination notice of Plaintiff Mayer did not specify

the dates of the alleged acts, and thus violates Plaintiff Mayer's substantive due process rights.

11.    These unwarranted investigations that led to Plaintiff's termination did not follow the Complaint Review Policy provisions relating to the proper chain of command with which to follow when engaging in the Complaint Review process.  The specific provisions that Defendant City failed to follow are:

      A.     Complaint Review Policy § IV(C)(5) which states "[t]he primary responsibility for maintaining and reinforcing conformance with the standards of conduct of this departments shall be with the employee and the first line supervisor."

      B.     Complaint Review Policy § IV(C)(11) which states "[s]upervisory personnel will initiate and conduct investigations when they personally observe or learn of misconduct falling within the scope of their authority."

      C.     Complaint Review Policy § IV(C)(11)(b) which states "[w]hen an employee's repeated violations of certain standards constitute more than a minor allegation, the immediate supervisor will be responsible for filing a complaint describing the violations with the Office of the Chief of Police."

12.    Plaintiff's filing of Complaints did not render the police department inefficient, nor did Plaintiff's complaints disrupt the police department or City workplace in any identifiably significant manner.

13.    The unwarranted investigations by the Defendants under color of law and unauthorized by the Council qualify as adverse employment actions against Plaintiff.

14.     As a direct and proximate result of the aforesaid conduct of Defendants, taken under color of law, Plaintiff has sustained lost wages and other benefits of employment, pain, suffering, humiliation, embarrassment, loss of reputation, diminution of self esteem, and loss of sleep and appetite.

15.     Plaintiff's termination and termination of medical benefits qualifies as an adverse employment actions against Plaintiff, as authorized and approved by the Defendants acting under color of law.

16.     Defendant City of St. Charles failed to timely provide information to the St. Louis Metropolitan Police Department in retaliation for Plaintiff asserting his rights to freedom of speech and association and in retaliation for filing a petition to redress grievances on matters of public concern.  Defendant City of St. Charles actions constitute further adverse employment actions taken against Plaintiff.

17.     The conduct of the individual Defendants, under color of law, as aforesaid was wanton, willful and showed reckless indifference for Plaintiff's constitutional rights, as set forth above.

18.     The conduct of the agents of Defendant City, acting under color of law, established an unlawful custom and policy of repeatedly retaliating against Plaintiff in violation of Plaintiff's constitutional rights.

WHEREFORE, Plaintiff asks the Court to enter judgment in his favor, and for the following specific relief:

1.     For Defendants City of St. Charles, John Gieseke,  Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller,

Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti compensate and pay Plaintiff's lost wages and other benefits of employment, liquidated damages, front-pay damages, and/or reinstatement with full back-pay and lost benefits of employment.

2.      That Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay Plaintiff damages to compensate him for the pain and suffering he has endured and loss of reputation as aforesaid, due to their actions and omissions, as set forth above.

3.      That the individual Defendants John Gieseke,  Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay punitive damages.

4.      That Defendants City of St. Charles, John Gieseke,  Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti be ordered to pay Plaintiff's attorneys' fees and costs of court.

5.      For such other and further relief as the Court deems just and proper.

**COUNT V**
**42 U.S.C. §1983**
**VIOLATION OF SUBSTANTIVE DUE PROCESS**

COMES NOW, Plaintiff and in support of Count V of his Complaint against Defendant,

City of St. Charles and John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti, in this cause of action, states as follows:

1. Plaintiff hereby adopts and incorporates by reference, as if more fully set forth herein, each and every paragraph of his Common Factual Allegations and Counts I, II, III, and IV as paragraph 1 of Count V of his Complaint.

2. Defendants conspired to and violated Plaintiff's federally secured rights in violation of 42 U.S.C. §1983.

3. Defendants' conduct as stated herein, including the conduct set forth in the Common Allegations and Counts I, II and III, was so outrageous that it shocked the conscience or otherwise were arbitrary and offended judicial notions of fairness and was offensive to human dignity.

4. Plaintiff's liberty interest in his right to engage in the common occupations of life, namely police work and President of the FOP, was interfered with by Defendants' conduct and resulted in loss of benefits of Plaintiff's employment and loss of reputation and emotional distress.

5. Plaintiff was continually investigated without cause up to the time of his termination as detailed above, treated adversely, subject to defamatory actions and comments and subjected to Defendants' stigmatizing conduct without the opportunity to clear his name.

6. Plaintiff was singled out for investigation and defamation and Plaintiff's liberty and property interests outweigh any interest of Defendants in engaging in such conduct.

7. Defendants conduct was arbitrary and unjustified and intended to injure Plaintiff.

30

8.      Plaintiff's loss of his department police vehicle, use of administrative hours, numerous unwarranted and retaliatory investigations done at the behest of City Council members and false statements by the Defendants qualify as adverse employment actions against Plaintiff, as authorized and approved by the Defendants acting under color of law.

9.      Plaintiff Mayer has further endured a loss of reputation as a law enforcement officer and as a citizen and President of the Fraternal Order of Police, as a result of the Defendants conduct.

10.      Plaintiff's termination and termination of medical benefits qualifies as an adverse employment action against Plaintiff, as authorized and approved by the Defendants acting under color of law.

WHEREFORE, Plaintiff asks the Court to enter judgment in his favor, and for the following specific relief:

1.      For Defendants City of St. Charles, John Gieseke,  Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti compensate and pay Plaintiff's lost wages and other benefits of employment, liquidated damages, front-pay damages, and/or reinstatement with full back-pay and lost benefits of employment.

2.      That Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay Plaintiff damages to compensate him for the pain and suffering he has

endured and loss of reputation as aforesaid, due to their actions and omissions, as set forth above.

3.    That the individual Defendants John Gieseke,  Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay punitive damages.

4.    That Defendants City of St. Charles, John Gieseke,  Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti be ordered to pay Plaintiff's attorneys' fees and costs of court.

5.    For such other and further relief as the Court deems just and proper.

### COUNT VI
### CIVIL CONSPIRACY UNDER MISSOURI LAW

COMES NOW, Plaintiff and in support of Count VI of his Complaint against Defendant, City of St. Charles, all named Defendants, and unnamed coconspirators, in this cause of action, requests that this Court to permit joinder of his state law tort claim, and states as follows:

1.  Plaintiff hereby adopts and incorporates by reference, as if more fully set forth herein, each and every paragraph of his Common Factual Allegations and Count I through V, as paragraph 1 of Count VI of his Complaint.

2.    Defendants, jointly and individually through a meeting of the minds along with unnamed co-conspirators, acted to harass and injure Plaintiff and force his resignation as Sergeant for the City of St. Charles Police Department.

3.    Defendants acted to defame Plaintiff and unlawfully denied him of his right to

free association and speech through the acts set forth in the Common Allegations and Counts I, II, III and IV of taking away his department police vehicle, eliminating his use of administrative hours, continuing to order unfounded and retaliatory investigations and by making and publishing false statements about Plaintiff.

4.     As a result of the continued investigations of Sergeant Mayer, establishing a City policy of harassing Sgt. Mayer, and the loss of his use of administrative time and a Department take-home vehicle, Sergeant Mayer's health was negatively affected, including loss of sleep and increased stress, resulting in ongoing medical treatment.

5.     Plaintiff Mayer has further endured a loss of reputation as a law enforcement officer and as citizen and President of the FOP, as a result of the Defendants conduct.

6.   Plaintiff's termination and termination of medical benefits qualifies as an adverse employment action against Plaintiff, as authorized and approved by the Defendants acting under color of law.

WHEREFORE, Plaintiff asks the Court to enter judgment in his favor, and for the following specific relief:

1.     For Defendants City of St. Charles, John Gieseke,  Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti compensate and pay Plaintiff's lost wages and other benefits of employment, liquidated damages, front-pay damages, and/or reinstatement with full back-pay and lost benefits of employment.

2.     That Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory

Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay Plaintiff damages to compensate him for the pain and suffering he has endured and loss of reputation as aforesaid, due to their actions and omissions, as set forth above.

3. That the individual Defendants John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti pay punitive damages.

4. That Defendants City of St. Charles, John Gieseke, Bob Hoepfner, Rory Riddler, Larry Muench, Mark Brown, Robert Kneemiller, Michael Weller, Jerry E. Reese, Dottie Greer, Joe Koester and Michael Valenti be ordered to pay Plaintiff's attorneys' fees and costs of court.

5. For such other and further relief as the Court deems just and proper.

## COUNT VII
## DEFAMATION UNDER MISSOURI LAW

COMES NOW, Plaintiff and in support of Count VII of his Complaint against Defendants, Bob Hoepfner, John Gieseke and Mark Brown, and other defendants not yet named with certainty, in this cause of action, requests that this Court permit joinder of Plaintiff's state law tort claim, and states as follows:

1. Plaintiff hereby adopts and incorporates by reference, as if more fully set forth herein, each and every paragraph of his Common Factual Allegations and Counts I through VI, as paragraph 1 of Count VII of his Complaint.

34

2.      Defendants Hoepfner and Brown's statements defaming Plaintiff were spoken to others at a City Council meeting on May 18, 2004 in public session and published in the First Capital News.

3.      During the City Council meeting at issue, Defendant Gieseke stated that he affirmed and agreed with the statement made by the City Council members, including the statements made by Defendants Hoepfner and Brown.

4.      Such statements included false claims that Plaintiff engaged in illegal conduct, conduct violative of Plaintiff's oath as a police officer and was conduct unbecoming of a police officer.  The above statements were made with actual malice and with further disregard as to whether or not the statements were true or false.

5.      Plaintiff Mayer endured a loss of reputation as a law enforcement officer and as a citizen and President of the Fraternal Order of Police, as a result of the Defendants Brown and Hoepfner's conduct.

WHEREFORE, Plaintiff asks the Court to enter judgment in his favor, and for the following specific relief:

1.      That Defendants Bob Hoepfner, John Gieseke and Mark Brown pay Plaintiff an amount of money to compensate him for the pain and suffering he has endured and loss of reputation as aforesaid, due to their actions and omissions of Defendants, as set forth above.

2.      That Defendants Bob Hoepfner, John Gieseke and Mark Brown pay punitive damages to Plaintiff.

3.      That Defendants Bob Hoepfner, John Gieseke and Mark Brown be

ordered to pay Plaintiff's attorneys' fees and costs of court.

4. For such other and further relief as the Court deems just and proper.

## COUNT VIII
## 42 U.S.C. § 300bb
## VIOLATION OF THE PUBLIC HEALTH SERVICES ACT

COMES NOW, Plaintiff and in support of Count VIII of his Complaint against

Defendant, City of St. Charles, in this cause of action, states as follows:

1. Plaintiff hereby adopts and incorporates by reference, as if more fully set forth

herein, each and every paragraph of his Common Factual Allegations and Counts I through VII,

as paragraph 1 of Count VIII of his Complaint.

2. Defendant, as administrator of Plaintiff's health insurance benefit plan, had

discretionary authority to administer it.

3. Defendant breached its fiduciary duty and violated 42 U.S.C. §300bb-6 by failing

to timely notify Plaintiff of his right to elect for continuation of coverage under his health care

benefits plan within the time period mandated by statute.

4. Defendant's conduct shows willful indifference for Plaintiff's federally protected

rights and was done in retaliation for Plaintiff Mayer's actions of speaking on matters of public

concerns, joining with others to speak on matters of public concern, and filing a lawsuit to

address the matters of public concern.

WHEREFORE, Plaintiff asks the Court to enter judgment in his favor, and for the

following specific relief:

1. That this Court order and decree that Defendant City of St. Charles failed to

provide Plaintiff Mayer with notice of his continuing health care benefits as required by 42

U.S.C. § 300bb-1.

      2.     That Defendant City of St. Charles be ordered to pay Plaintiff's attorneys' fees and costs of court.

                        Respectfully Submitted,

                        THE KLOEPPEL LAW FIRM
                        THE LAW OFFICES OF KEVIN J. DOLLEY

By:       GREG KLOEPPEL      s/s
             GREG KLOEPPEL, USDC #85918
             KEVIN J. DOLLEY, MBE #54132
             Attorneys for Plaintiff
             9620 Lackland
             St. Louis, MO 63114
             Phone:(314) 423-8003
             Fax:  (314) 423-8054

## CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing was filed August 29, 2005 electronically with the Clerk of the Court to be served by operation of the court's electronic filing system upon the following: C. John Pleban, Michael J. Schaller, PLEBAN & ASSOCIATES, LLC, 2010 S. Big Bend Blvd., St. Louis MO 63117, John S. McCollough, Paul Simon, Jr., HELFREY, SIMON & JONES, P.C., 120 South Central Avenue, Suite 1500, St. Louis, Missouri 63105.

                        GREG KLOEPPEL      s/s